UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CARSON THOMAS, DOC 392537

CIVIL ACTION NO.

VERSUS

JAMES M. LEBLANC, SECRETARY
OF THE LOUISIANA DEPARTMENT
OF PUBLIC SAFETY AND CORRECTIONS      JUDGE
AND THE COMMITTEE ON PAROLE OF
THE LOUISIANA BOARD OF PARDONS

**********************************************************

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Complaint of Carson Thomas, citizen of the State of Louisiana and currently domiciled at Dixon Correctional Institute in East Feliciana Parish, respectfully represents:

1.

Named defendants herein are:

A.    James Leblanc, Secretary of the Louisiana Department of Public Safety and Corrections who is sued herein in his official capacity and

B.    The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza.

2.

Jurisdiction arises herein under 28 USC § 1331, providing the district courts shall have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Specifically, this is a suit seeking declaratory

1

and injunctive relief for violation of civil rights pursuant to 42 USC §1983, 42 USC §1988, and supplemental jurisdiction under 28 USC §1367. Set forth below are plaintiff's claims alleging violation of Due Process, *ex post facto* application of law and of a liberty interest cognizable under the United States Constitution and created by the State of Louisiana.

3.

Venue is proper in the Middle District of Louisiana under 28 USC §1391 as the defendant, James Leblanc, sued herein in his official capacity, is the Secretary of the Louisiana Department of Public Safety and Corrections (DPSC) who is domiciled within the Middle District. The Committee on Parole is likewise domiciled in the Parish of East Baton Rouge. To the extent that the proper defendant may be the State of Louisiana, the seat of state government is within the Middle District.

4.

Carson Thomas (DOC #392537) is a prisoner of the State of Louisiana after sentencing for a conviction of armed robbery. Mr. Thomas has exhausted his administrative remedies as to all issues raised herein. *See* DCI ARP 2016-893; Exhibit A.

5.

Carson Thomas was arrested on February 9, 1997, for one count of armed robbery. He was indicted, convicted, and sentenced to 50 years with credit for time served. Mr. Thomas' sentence was subsequently amended to 30 years with credit for time served.[1]

6.

Mr. Thomas has spent the past 21 years incarcerated with the Louisiana Department of Corrections. He is currently 46 years old.

7.

For most of the past 20 years, Mr. Thomas' master prison records reflected a parole eligibility date of 2017, in accordance with Act 790, which is also known as "geriatric parole" and provides an offender serving 30 years or greater shall be eligible for parole upon serving 20 years of his sentence and attaining the age of 45.

8.

On October 12, 2016, Mr. Thomas was brought before the Committee on Parole for his initial parole hearing pursuant to Act 790. Exhibit B. Mr. Thomas' family was in attendance, having flown to Louisiana from California at a tremendous expense. Upon entering the parole hearing, Mr. Thomas was informed – for the first

---

[1] The change in Mr. Thomas' sentence has no impact on the claims raised herein.

time – that he is not parole eligible under Act 790 and must serve 85% of his sentence before becoming parole eligible, pursuant to Act 1099.

9.

Mr. Thomas filed a timely request for administrative remedy (ARP) and argued that Act 1099 does not affect his parole eligibility under Act 790. Mr. Thomas' timely-filed second step was denied on April 25, 2017.  Exhibit A.

## Louisiana Geriatric parole and History of Act 790

10.

By the mid-1980s several events concurrently required a change in the parole eligibility for armed robbery offenders. First, the entire prison system was under federal consent decree with mandatory population "caps." The effect of the *Hayes Williams v. Mckeithen* decree was to place a premium on prison bed space.[2] A second factor was the recognition that Angola was rapidly filling up with lifers as a result of sentencing changes that followed the abolition of the death penalty in *Furman v. Georgia* in 1972. Finally, the building spree that Louisiana undertook following the affirmance of the *Hayes Williams* judgment was coming to an end and there was no more bed space.

---

[2] Docket number 71-98 on the Docket of the United States District Court, Middle District of Louisiana,

11.

By the mid-1980s, Louisiana prisons were becoming overcrowded and a significant cause of the overcrowding was from an increase in the number of inmates serving very long sentences. The Louisiana Sentencing Commission and the Governor's Task Force on Overcrowding proposed a series of legislative measures to help alleviate the overcrowding and to help lower the prison population.

12.

In 1987 the Governor's Task Force on Prison Overcrowding offered a package of legislative solutions.

13.

One such legislative solution was proposed by Representative Bruce Lynn in the form of House Bill 533 which became Act 60 of 1987.[3]

14.

Act 60 amended the provisions of R.S. 15:574.4 to read:

Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years in actual custody and upon reaching the age of sixty. This provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years.

---

[3] Bruce Lynn became the Secretary of the Louisiana Department of Corrections the following year.

15.

Act 60 was called the "geriatric parole" provision and "It also expressly applies and is only relevant to cases of offenders who are serving very long sentences or are otherwise prohibited by law from parole eligibility." See *Joseph, Developments in the law 1986-1987 – Criminal Procedure, 48 La. L. Rev. 257 (1987.)*

16.

The express language of Act 60 makes it clear that the act is designed to ameliorate the harsh sentencing provisions of LA R.S. 14:64:

1. The Act commences with "Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary" which refers specifically to the previous prohibition of armed robbery parole eligibility.

2. "With or without parole eligibility" language makes clear that except as later modified internally in Act 60, anyone serving a sentence of a fixed term without parole eligibility is now eligible upon meeting the age and length of sentence criteria.

3. The requirement is that of a fixed term (no life sentences is expressly mentioned.) Had the legislature desired to continue to exclude armed robbers, the exclusion would have been inserted at this juncture in the Act.

17.

In the above cited law review article, Professor Joseph explains the effects of

Act 60 by using an example of armed robbery, stating:

> If an armed robber is sentenced to 198 years as a multiple offender
> without benefit of parole, under the 'geriatric' parole provisions he will
> nevertheless ('Notwithstanding . . . any other law to the contrary . . .')
> becomes eligible when he has served twenty years and has reached the
> age of sixty. If sentenced at age forty-five, he will have to serve until
> he is sixty-five to complete the twenty years. On the other hand, if
> sentenced at age thirty he will have to serve thirty years before reaching
> age sixty.

18.

In 1990, Act 790 of the Louisiana Legislature became law and decreased the

overall age of an offender eligible for geriatric parole from 60 to 45 years. The DPSC

amended and corrected the master prison records of all parole eligible armed robbery

offenders with a sentence of thirty years or more to reflect a parole eligibility date

after having served 20 years and having reached age 45.

19.

In 1995, the legislature enacted Act 1099 (effective January 1, 1997) which

changed the rate at which offenders earned good time for crimes of violence. Act

1099 was first presented as House Bill 146 and specifically decreased the rate at

which prisoners earned good time for crimes of violence, requiring that for such

offenses the offender must serve 85% of his sentence before being eligible for release

on good time.

20.

The minutes from House Bill 146 clearly show that the purpose of this bill was to affect good time <u>only</u> without any change in a violent offender's eligibility for geriatric parole. In fact, geriatric parole eligibility is not mentioned <u>at all</u> in the committee minutes. Exhibit C.

21.

As reflected by the minutes, Pete Adams of the Louisiana District Attorneys Association stated that "House Bill No. 146 would only reduce good time." Richard Stadler, former Secretary of the Department of Corrections, stated that House Bill No. 146 "will change good time." Neither Mr. Adams, Mr. Stadler, nor any member of the House Committee mentioned that Act 1099 was intended to remove geriatric parole from individuals convicted of crimes of violence. *See* Exhibit C.

22.

In 2008, Act 624 of the Regular Session specifically removed those individuals convicted of armed robbery from geriatric parole eligibility. Exhibit D. This law took effect on August 15, 2008 and applied prospectively to all armed robberies committed on or after this date.

23.

Carson Thomas was arrested on February 9, 1997 for armed robbery. He has now served 21 years of his sentence and is 46 years old. He is therefore eligible for geriatric parole under Act 790. In denying Mr. Thomas parole eligibility, the DPSC relied upon Act 1099 and stated that Mr. Thomas must serve 85% of his sentence before becoming eligible for parole. However, parole and good time are clearly distinct forms of statutory release. While Mr. Thomas is ineligible for release on good time until he has served 85% of his sentence, Mr. Thomas' eligibility for geriatric parole is unaffected, as his offense occurred prior to 2008, when the legislature clearly removed armed robbers from geriatric parole eligibility.

24.

In denying his second-step, the Department of Corrections informed Mr. Thomas that pursuant to DPSC Regulation B-04-004 F(2), geriatric parole (Act 790) does not apply to offenders with offense dates committed on or after January 1, 1997. Clearly, DPSC has arbitrarily modified its internal regulations, as B-04-004F(2) previously provided:

> F. Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.

1) The above provision does not apply to those offenders who are serving a life sentence.

2) Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 <u>when the offense was committed on or after **August 15, 2008.**</u>

Exhibit E (emphasis added).

25.

Upon information and belief, there are other individuals similarly situated to Mr. Thomas, who committed an armed robbery prior to August 15, 2008 and are being denied geriatric parole eligibility under Act 790.

26.

Mr. Thomas received at least three master prison records that reflected a parole eligibility date in accordance with Act 790.

27.

Because of the inscribing of the master prison record with a parole eligibility release under Act 790, the regulation B-04-004 and the actual practice of the DPSC and the Committee on Parole, a liberty interest has been created. The expectation of the population of armed robbery offenders whose offense dates are between January 1, 1997 and August 15, 2008, is that they will receive a fair parole hearing upon reaching the "20/45" provisions of the geriatric parole statute.

28.

The DPSC has made certain agreements with counsel for counsel for plaintiff in litigation entitled *David Tell v. Richard Stalder, et al.,* Number 541,059 Section 8, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

29.

One such agreement made in the *Tell* case was that the outcome of the *Tell* litigation would apply to all prisoners with armed robbery convictions.

30.

Another agreement reached in the *Tell* litigation was that master records would reflect the Act 790 dates for armed robbery inmates.

31.

Also, it was agreed in the *Tell* litigation that no appeal would be taken from the State District Court ruling in *Tell* and that *Tell* would go final.

32.

The agreement of the DPSC to accept as final the results of the *David Tell* litigation further set up an expectation that the "20/45" practice would continue.

33.

In 2014, a settlement was reached in the case of *Jerry Francis, et al. v. James Leblanc, et al.,* Middle District of Louisiana Docket No. 13-691-JJB-RLB. At issue in this case was that the DPSC had removed parole eligibility from armed robbers

whose offenses occurred prior to January 1, 1997. As part of the settlement order, the DPSC agreed to restore Act 790 parole eligibility to those offenders whose armed robbery offense occurred prior to January 1, 1997. *See* Exhibit F. However, the *Francis* decision pretermitted any decision concerning those offenders convicted of armed robbery between January 1, 1997 and August 15, 2008.

34.

Carson Thomas believed for 20 years that he would be eligible for parole consideration upon attaining the age of 45 and serving 20 years of his sentence. Mr. Thomas held this belief because the DPSC repeatedly informed him that this would be the case, and even set his matter for hearing.

35.

The DPSC, through James Leblanc, Secretary, is responsible for establishing a parole eligibility date and causing the parole eligibility date to be placed on the offender's master prison record.

36.

The Committee on Parole is responsible for scheduling a parole hearing for an offender.

37.

*Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) sets forth how a liberty interest such as in a parole eligibility date is created stating

that the liberty interest "may arise from an expectation or interest created by state laws or policies...." *See also Swarthout v. Cooke*, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) assuming a liberty interest in parole eligibility.

38.

A liberty interest has been created here in favor of Carson Thomas, plaintiff, and any similarly situated individual.

39.

The liberty interest created is that, upon fulfilling the requirements of Act 790 (which Mr. Thomas has done), that the parole eligible armed robbery offender <u>will be</u> given a hearing. This liberty interest is protected by the 14th Amendment to the United States Constitution and cannot be arbitrarily withdrawn.

40.

Defendants have violated Mr. Thomas' rights under 14th Amendment to the United States Constitution by cancelling and refusing to reschedule his parole hearing. This is an ongoing violation of Mr. Thomas' constitutional rights, as the DPSC continues to misinterpret applicable law and misconstrue the statutes to arbitrarily deny Mr. Thomas a parole hearing to which he is clearly entitled.

41.

Additionally, as a matter of substantive Due Process, the DPSC may not *ex post facto* apply Act 624 (or any other law to the contrary) to remove parole

eligibility from those individuals convicted of armed robbery, such as Mr. Thomas, who had a geriatric parole date for many years prior to 2008 and was anticipating that hearing.

## **Declaratory and Injunctive Relief Sought**

42.

Mr. Thomas seeks a declaratory judgment as to both defendants adjudicating the rights of Mr. Thomas and ordering:

1.    That Mr. Thomas' parole eligibility date under Act 790 be restored and reflected on his Master Prison Record;

2.    That Mr. Thomas be placed on the next available Dixon Correctional Institute parole docket, so his case may be heard.

43.

Mr. Thomas also seek an injunction ordering the DPSC and the Committee on Parole to re-set him on the parole docket for hearing.

44.

Mr. Thomas has and will continue to suffer irreparable injury which cannot be compensated in money in that he remains incarcerated without a parole hearing and has suffered the loss of opportunity to be granted parole and supervised release thereafter.

45.

Mr. Thomas has retained counsel to prosecute this matter and is entitled to an award of attorney fees and costs as prevailing party under 42 USC §1988.

**WHEREFORE, CARSON THOMAS PRAYS** that there be judgment herein in his favor, and in the favor of any similarly situated individuals, against James Leblanc, Secretary of the Louisiana Department of Public Safety and Corrections in his official capacity and the Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza decreeing that:

1. Parole eligibility is restored as to Mr. Thomas under Louisiana Act 790 of 1990.

2. That Carson Thomas is restored to the parole docket as promptly as possible and thereafter heard.

3. That a preliminary and thereafter permanent injunction issue herein ordering the DPSC to maintain a parole eligibility date for Mr. Thomas and ordering the Louisiana Committee on Parole to hold a hearing for Mr. Thomas.

**CARSON THOMAS PRAYS** for all equitable relief as may be allowed by law and further prays for an award of attorney fees pursuant to 42 USC §1988 and for all costs herein.

Respectfully submitted,

*s/ Jane Hogan*

_____

**JANE HOGAN,** Bar Roll No. 35172
Hogan Attorneys
309 East Church Street
Hammond, Louisiana 70401
(985) 542-7730
(985) 542-7756 fax

**_Counsel for Carson Thomas_**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by Electronic Notice.

Hammond, Louisiana, this 24th day of April, 2018.


*s/ Jane Hogan*
Jane Hogan

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carson Thomas, DOC 392537

**DEFENDANTS**

James Leblanc, Secretary Department of Public Safety/Corrections
Sheryl Ranatza, Chair of Louisiana Parole Committee

**(b)** County of Residence of First Listed Plaintiff   East Feliciana
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   East Baton Rouge
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jane Hogan, Hogan Attorneys,
310 North Cherry Street, Hammond, LA 70401 985-542-7730

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☒ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. 1983

Brief description of cause:
Aribitary denial of parole hearing

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
04/24/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: DCI-2016-893

SECOND STEP RESPONSE FORM
(HEADQUARTERS)


TO: <u>THOMAS, CARSON    392537</u>                           <u>DIXON CORR CTR</u>
      Offender Name and Number                              Living Unit


Response to Request Dated , Received in this Office on 02/23/2017:

Your request for an Administrative review of ARP # DCI-2016-893 has been received.  A qualified member
of the Headquarters staff has reviewed your request in order to render a fair and impartial response

We accept staff's position on the matter and can add nothing to make the issue any clearer.  It has been
determined, after a thorough review of all pertinent documentation, that your request was adequately
addressed at the first step.  Therefore, the first step response prepared by the staff has been determined
to be clear and concise and has thoroughly addressed your issues.
You committed Armed Robbery on or about 02-09-1997 in East Feliciana Parish per docket #97CR510.
You were sentenced on 04-22-2003.  According to Department Regulation B-04-004 F, 2 page 4 (ACT
790) an offender sentenced for a term or terms of imprisonment with our without benefit of parole for 30
years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody
and reaching the age of 45. However, section F-2 says the above provision does not apply to those
offender convicted of La.R.S. 14:64 (Armed Robbery) when the offense was committed on or after January
1, 1997.  Therefore, you are not eligible for parole under ACT 790 of the 1990 Regular Session.  There is
no reason for Administrative Intervention.

Your request for relief is denied at Headquarters Level.



_____
          4/28/17
               Date

                                        _____
                                        Secretary's Signature or His Designee


EXHIBIT
A

DATE: 11/10/2016        DOCKET FILE REPORT---DIXON CORRECTIONAL CENTER        HEARING DATE:
10/12/2016

PAGE: 1                          DSP CODE: G=GRANTED, D=DENIED,
                                 I=INELIGIBLE, R=REMOVED,
                                 W=WITHDREW, O=WORK RELEASE

NBR NAME                   DOC#   R/S DOB    LOC   PED    |DSP
PAR/CONV  DIST  OFCL  PI/RECD    NV/RECD              RISK REV
    DOCKET #   OFFENSE               MOD        HEAR DATE
----------------------------------------------------------------------
01 ARDOIN, KEENAN J        00632910 B/M 08/13/1993 DCI 20170430| D
  EVN    VPD   01  09/15/2016
    101396    THEFT $500 OR MORE                20161012
    101396CT2 SMPL-CRMNL DMG PROPERTY
----------------------------------------------------------------------
02 BOURQUE, RANDY          00227105 W/M 03/24/1962 DCI 20170321| R
  LAF    LFD   03  09/20/2016
    146695    SIMPLE BURGLARY              20161012
----------------------------------------------------------------------
03 BRIGGS, WESLEY          00102715 B/M 02/03/1959 DCI 20050920| D
  VRM    LFD   04  09/15/2016
    25065    FORCIBLE RAPE        HAB      20161012
----------------------------------------------------------------------
04 CRENSHAW, DENNIS L      00189219 W/M 08/17/1962 OAS 20181210| R
  CDO    MOD   01
    220437    VEHICULAR HOMICIDE          20161012
    220437    FIRST DEGREE VEH NEG INJURY
----------------------------------------------------------------------
05 DAUZAT, JOSEPH          00474800 W/M 07/28/1983 DCI 20170414| R
  JEF    EJD   02  06/01/2016
                              20161012
----------------------------------------------------------------------
06 DAVIS, WILLIE           00532747 B/M 02/15/1962 MID 20160617| R
  CLA    MID   02
    23398    OPER-VEHICLE-INTOXICATED    3RD      20161012
    29208    OPER-VEHICLE-INTOXICATED    4TH
    25290    OPER-VEHICLE-INTOXICATED    3RD
----------------------------------------------------------------------
.eject
DATE: 11/10/2016        DOCKET FILE REPORT---DIXON CORRECTIONAL CENTER        HEARING
DATE: 10/12/2016

PAGE: 2                          DSP CODE: G=GRANTED, D=DENIED,
                                 I=INELIGIBLE, R=REMOVED,
                                 W=WITHDREW, O=WORK RELEASE

NBR NAME                   DOC#   R/S DOB    LOC   PED    |DSP
PAR/CONV  DIST  OFCL  PI/RECD    NV/RECD              RISK REVIEW
    DOCKET #   OFFENSE               MOD        HEAR DATE
----------------------------------------------------------------------
07 HEBERT, KENNETH E       00575923 W/M 11/18/1982 DCI 20261025|
  LIV    AMD   01  09/21/2016


EXHIBIT
B

```
   24845    FORCIBLE RAPE                    20161012
---------------------------------------------------------------
08 LE, LESLEY H           00706230 A/M 06/17/1986 THD 20170409| R
 TER     THD    02
   700374    SCHEDULE I                    20161012
   711000    SCHEDULE II
---------------------------------------------------------------
09 MILLER, JULIUS         00516070 W/M 06/01/1965 DCI  20160122| D
 STM     CVD    02
                           20161012
---------------------------------------------------------------
10 STEWART, MARVIN M      00467444 B/M 07/13/1983 DCI  NOTELG | I
 ORL     NOD    03
   520783    SCHEDULE I           HAB      20161012
---------------------------------------------------------------
11 THOMAS, CARSON W       00392537 B/M 06/07/1971 DCI  20390811|
 EFL     FED    02 09/27/2016
   97CR510   ARMED ROBBERY                 20161012
---------------------------------------------------------------
12 WILLIAMS, TEVAREA L    00592105 B/M 05/27/1993 NDD  20170427| R
 CDO     SPD    02
   301062    SCHEDULE I                    20161012
---------------------------------------------------------------
.eject
```

DATE: 11/10/2016      DOCKET FILE REPORT---DIXON CORRECTIONAL CENTER         HEARING
DATE: 10/12/2016

PAGE: 3                    DSP CODE: G=GRANTED, D=DENIED,
                           I=INELIGIBLE, R=REMOVED,
                           W=WITHDREW, O=WORK RELEASE

```
NBR NAME              DOC#   R/S DOB   LOC  PED   |DSP
 PAR/CONV  DIST  OFCL PI/RECD   NV/RECD           RISK REVIEW
   DOCKET #  OFFENSE           MOD      HEAR DATE
---------------------------------------------------------------
---------------------------------------------------------------
```

# ADMINISTRATION OF CRIMINAL JUSTICE COMMITTEE

Minutes of Meeting
1995 Regular Session
May 3, 1995

## I.    CALL TO ORDER

Representative Raymond Lalonde, chairman of the House Committee on Administration of Criminal Justice, called the meeting to order at 10:35 a.m. in Committee Room 1 of the State Capitol, in Baton Rouge, Louisiana.

## II.    ROLL CALL

**MEMBERS PRESENT:**                                    **MEMBERS ABSENT:**

Representative Raymond Lalonde,
  Chairman
Representative Donald Ray Kennard,
  Vice Chairman
Representative Buster Guzzardo
Representative Alex Heaton
Representative Audrey McCain
Representative Roy Quezaire
Representative Michael Russo
Representative Gerald Theunissen
Representative Stephen Windhorst

**STAFF MEMBERS PRESENT:**

Jan Jordan, Staff Attorney
A. Gregory Riley, Staff Attorney
Peggy Duerr, Administrative Secretary
Karmin Carr, Secretary
Margaret Jackson, Sergeant at Arms

## III.    DISCUSSION

**House Bill No. 146 by Representative Kennard**

Representative Kennard presented House Bill No. 146, which would provide a decrease in the rate at which prisoners earn good time and would require that an offender convicted of a crime of violence serve at least 85% of his sentence before being eligible for parole.



1

**MINUTES, ADMINISTRATION OF CRIMINAL JUSTICE**      **MAY 3, 1995**

He stated that the bill would provide that for every 17 days an inmate served, he would receive three days of good time, which would be approximately five days per month. The present law states that the inmate receives one day of good time for each day served. He added that a crime is committed every six seconds in the country and a violent crime is committed every 21 seconds. He further added that approximately 3.2 million convicted felons are out on parole or probation, rather than in prison, and that changes need to be made in the criminal justice system to restore integrity to the process. Representative Kennard stated that statistics show that 62% of those criminals paroled are arrested for another felony within three years. He said that according to some studies, 70% of criminals released on parole will be rearrested for a serious crime within six years of their release.

Representative McCain questioned if the recidivism rate of the criminals being released and committing crimes again would decrease if they were required to stay a longer period of time in prison. Representative Kennard replied that if the prisoners are kept in prison for the majority of their sentence then they "mellow with age" and have had time to consider the crime they committed.

Representative Quezaire questioned whether Louisiana would be eligible for federal funding. Representative Kennard replied that he believes the importance of the bill is that it would send a message and then Louisiana would be in a better position to receive federal funds. Representative Quezaire then questioned if there is a direct correlation between incarceration and rehabilitation. Representative Kennard stated that it is possible that the longer a person stays in prison and goes through rehabilitation programs the more likely it is he will not commit crimes when released.

Pete Adams, Louisiana District Attorneys Association, Baton Rouge, LA, spoke in support of House Bill No. 146. He stated that good time for violent criminals should be eliminated, but House Bill No. 146 would only reduce good time. The bill would provide that if a person is sentenced to 10 years then he would remain in prison at least eight and one-half years. He added that judges know that when they sentence a person to 10 years that the person will only serve half of the sentence at the present time.

Richard Stalder, Secretary, Department of Public Safety and Corrections, spoke for informational purposes. He stated that the legislation will change good time for all inmates, not just violent inmates. He suggested an amendment to make the bill applicable to violent crimes only.

Representative Guzzardo offered the amendment to include only violent crimes in the bill. By a vote of 7-0-1, the amendment was adopted. Representatives Kennard, Guzzardo, Heaton, McCain, Quezaire, Russo, and Theunissen voted yea, and Representative Lalonde abstained.

Representative Guzzardo offered a motion to report House Bill No. 146 with amendments to which there were no objections. By a vote of 8-0-1, House Bill No. 146 was reported with amendments. Representatives Kennard, Guzzardo, Heaton, McCain, Quezaire, Russo, Theunissen, and Windhorst voted yea, and Representative Lalonde abstained.

**MINUTES, ADMINISTRATION OF CRIMINAL JUSTICE**                    **MAY 3, 1995**

Appearing in support of the bill:

Sandy Krasnoff
Victims and Citizens Against Crime
417 South Broad Street
New Orleans, LA  70119

Buddy Hodgkins
Louisiana Sheriff's Association
Baton Rouge, LA

**House Bill No. 447 by Representative Windhorst**

At the request of the author, Representative Lalonde announced that action on House Bill No. 447 would be deferred.  The bill would provide a decrease in rate at which prisoners earn good time and would require that an offender convicted of a crime of violence serve at least 85% of his sentence before being eligible for parole.

**House Bill No. 1961 by Representative Alario**

At the request of the author, Representative Lalonde announced that action on House Bill No. 1961 would be deferred.  The bill would provide a decrease in the rate at which prisoners earn good time and would require that an offender convicted of a crime of violence serve at least 85% of his sentence before being eligible for parole.

**House Bill No. 2417 by Representative Guzzardo**

Representative Guzzardo presented House Bill No. 2417, which would increase penalties for certain crimes of violence.

He stated that the bill provides that  if a person is convicted of or pleads guilty to a crime of violence, the sentencing court may deny or place conditions on the person's eligibility for diminution of a sentence for good behavior unless otherwise prohibited by law.  He added that this decision would be at the judge's discretion.

Pete Adams, Louisiana District Attorneys Association, spoke in support of House Bill No. 2417. He said that the bill would provide that for certain violent crimes if a judge decides that the criminal does not deserve good time, he can deny good time.  These crimes would include simple rape, sexual battery, aggravated sexual battery, oral sexual battery, and aggravated oral sexual battery.

Richard Stalder, Secretary, Department of Public Safety and Corrections, spoke for informational purposes on House Bill No. 2417.  He stated that he does support the legislation because it adds

Regular Session, 2008

HOUSE BILL NO. 110

BY REPRESENTATIVES CHAMPAGNE, BARRAS, AND LIGI

**ENROLLED**

# ACT No. 624

1                              AN ACT

2 To amend and reenact R.S. 15:574.4(A)(3), relative to parole eligibility; to provide that

3        persons convicted of armed robbery shall not be eligible for parole; and to provide

4        for related matters.

5 Be it enacted by the Legislature of Louisiana:

6        Section 1. R.S. 15:574.4(A)(3) is hereby amended and reenacted to read as follows:

7           §574.4. Parole; eligibility; consideration and hearings; decisions of board; nature,

8                order, and conditions; rules of conduct; offenders convicted of crimes of

9                violence; infectious disease testing

10                A.

11                          *     *     *

12           (3) Notwithstanding the provisions of Paragraph ~~(A)~~(1) <u>of this Subsection</u>

13 or any other law to the contrary, unless eligible for parole at an earlier date, a person

14 committed to the Department of Public Safety and Corrections for a term or terms

15 of imprisonment with or without benefit of parole for thirty years or more shall be

16 eligible for parole consideration upon serving at least twenty years of the term or

17 terms of imprisonment in actual custody and upon reaching the age of forty-five.

18 This provision shall not apply to a person serving a life sentence unless the sentence

CODING: Words in ~~struck through~~ type are deletions from existing law; words <u>underscored</u> are additions.

EXHIBIT

HB NO. 110                                                      **ENROLLED**

1    has been commuted to a fixed term of years.  The provisions of this Paragraph shall not

2    apply to any person who has been convicted under the provisions of R.S. 14:64.

3                                    *       *       *


_____
SPEAKER OF THE HOUSE OF REPRESENTATIVES


_____
PRESIDENT OF THE SENATE


_____
GOVERNOR OF THE STATE OF LOUISIANA


APPROVED: _____

CODING:  Words in struck through type are deletions from existing law; words underscored are additions.

Department Regulation No. B-04-004
01 August 2012
Page Four

F.    Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.

1)    The above provision does not apply to those offenders who are serving a life sentence.

2)    Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 when the offense was committed on or after August 15, 2008.

G.    Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term or terms of imprisonment with or without benefit of parole who has served at least ten years of the term or terms of imprisonment in actual custody shall be eligible for parole consideration upon reaching the age of sixty years if all of the following conditions are met:

1)    The offender has not been convicted of a crime of violence as defined in La. R.S. 14:2(B) or a sex offense as defined in La. R.S. 15:541, regardless of the date of conviction;

2)    The offender has not committed any disciplinary offenses in twelve consecutive months prior to parole eligibility;

3)    The offender has completed the mandatory minimum of 100 hours of prerelease programming, if such programming is available at the facility where the offender is housed;

4)    The offender has completed substance abuse treatment if applicable;

5)    The offender has obtained a General Equivalency Diploma (GED), unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED. If deemed incapable of obtaining a GED, the offender shall complete at least one of the following: a literacy program; an adult basic education program or a job-skills training program;



EXHIBIT
E

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JERRY FRANCIS AND CALVIN CITTADINO

CIVIL ACTION

VERSUS

NO. 13-691-JJB-RLB

JAMES LE BLANC, SECRETARY OF
THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS
AND THE COMMITTEE ON PAROLE OF
THE LOUISIANA BOARD OF PARDONS

## ORDER

This matter is before the Court on a joint Motion (doc. 13) for Order of Dismissal following an agreement among the parties. Considering the stipulations (doc. 6) filed of record, the express agreement of the parties, and the Court concluding that jurisdiction is present, the Court finds:

The court record compels a finding that Louisiana Act 60 of 1987 and Louisiana Act 790 of 1990 (hereinafter "Act 790") include offenders convicted of armed robbery, and as such, they are eligible for parole consideration under the geriatric parole provisions of those acts. The historical practice of the Louisiana Department of Public Safety and Corrections has been to recognize eligibility for parole consideration to that population of offenders. The Louisiana Committee on Parole has historically considered offenders convicted of armed robbery with offense dates prior to January 1, 1997 to be eligible for consideration for release on parole. Further, prior to August 2013, parole eligibility was reflected on offenders' master prison records for those otherwise eligible armed robbery offenders with offense dates prior to January 1, 1997.

1

EXHIBIT
F

Now in consideration of the stipulations (doc. 6) made a part of the record in this matter and the agreement of the parties as set forth in the Motion (doc. 13) for Order of Dismissal filed herein:

**IT IS ORDERED** that the settlement of the parties is accepted and made a judgment of this court as set forth below, and the stipulations are fully incorporated in the settlement.

James M. Le Blanc, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, is permanently enjoined and ordered to provide a Parole Eligibility Date to Jerry Francis and Calvin Cittadino that reflects parole eligibility and consideration under Act 790 and is further enjoined from removing any parole eligibility date due solely to a conviction for armed robbery committed prior to January 1, 1997.

James M. Le Blanc, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, is permanently enjoined from denying release on parole supervision to any offender that has been granted parole by the Committee on Parole.

Sheryl Ranatza, in her official capacity as chair of the Committee on Parole of the Louisiana Board of Pardons, is permanently enjoined and ordered to place on the parole dockets for parole consideration Jerry Francis and Calvin Cittadino as both meet the criteria for eligibility for parole consideration under Louisiana Act 790 and have offense dates before January 1, 1997.

**IT IS FURTHER ORDERED** that in accordance with the stipulations of the parties and the settlement reached herein, that the relief accorded to Jerry Francis and Calvin Cittadino shall apply to all other offenders similarly situated and convicted of armed robbery with an offense date prior to January 1, 1997 and who otherwise meet the criteria of Louisiana Act 790 of 1990

**IT IS FURTHER ORDERED** that Sheryl Ranatza and James M. Le Blanc, both in their official capacities, shall not, solely by reason of a conviction for armed robbery that was

2

committed before January 1, 1997, remove or cause to be removed from a Parole Committee docket any offender otherwise eligible for parole consideration.

**IT IS FURTHER ORDERED** that in accordance with the agreements reached herein that all claims that may relate to any offender with an offense date on or after January 1, 1997 are dismissed without prejudice.

Signed in Baton Rouge, Louisiana, on January 30, 2014.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

3