# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CARSON THOMAS, DOC 392537

VERSUS

JAMES M. LEBLANC, SECRETARY OF
THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,
ET AL.

CIVIL ACTION

NO. 18-496-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Rule 12(b)(6) Motion to Dismiss* (Doc. 11) filed by Defendant Sheryl Ranatza. Plaintiff Carson Thomas opposes the motion. (Doc. 17.) No reply was filed. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

## I.   Relevant Factual Background

The following allegations are taken from the *Complaint for Declaratory and Injunctive Relief* ("*Complaint*" or "*Compl.*") (Doc. 1). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff is an inmate housed at Dixon Correctional Institute. (*Compl.* at 1.) Plaintiff brings this § 1983 action seeking declaratory and injunctive relief "alleging violation of Due Process, *ex post facto* application of law and of a liberty interest cognizable under the United States Constitution and created by the State of Louisiana." (*Id.* ¶ 2.)

Defendants in this action are James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), and "The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza." (*Id.* ¶ 1.) Only Ranatza brings this motion.

On February 9, 1997, Plaintiff was arrested for one count of armed robbery. (*Compl.* ¶¶ 4–5.) Plaintiff was convicted and sentenced to 50 years with credit for time served. (*Id.* ¶ 5.) Plaintiff's sentence was later amended to 30 years with credit for time served. (*Id.* ¶ 5.) Plaintiff has served 21 years and is currently 46 years old. (*Id.* ¶ 7.)

"For most of the past 20 years," Plaintiff's "master prison records reflect[ed] a parole eligibility date of 2017". (*Id.* ¶ 7.) This is because of Act 790, also known as "geriatric parole," which "provides an offender serving 30 years or greater shall be eligible for parole upon serving 20 years of his sentence and attaining the age of 45." (*Id.* ¶ 7.)

On October 12, 2016, Plaintiff "was brought before the Committee on Parole for his initial parole hearing pursuant to Act 790." (*Compl.* ¶ 8.) "Upon entering the parole hearing, Mr. Thomas was informed – for the first time – that he is not parole eligible under Act 790 and must serve 85% of his sentence before becoming parole eligible, pursuant to Act 1099." (*Id.* ¶ 8.)

Plaintiff devotes an entire section of his Complaint to the passage and legislative history of Act 60 of 1987 and Act 760 of 1990. (*Compl.* ¶¶ 9–18.) This section describes the development of "geriatric parole" in Louisiana. (*Id.*)

This section then describes Act 1099 of 1995, "which changed the rate at which offenders earned <u>good time</u> for crimes of violence." (*Compl.* ¶ 19.) Act 1099 "specifically decreased the rate at which prisoners earned <u>good time</u> for crimes of violence, requiring that for such offenses the offender must serve 85% of his sentence before being eligible for release on <u>good time</u>." (*Id.*) Plaintiff then details the legislative history of this act. (*Id.* ¶¶ 20–21.)

Next, the *Complaint* describes Act 624 of 2008, which "specifically removed those individuals convicted of armed robbery from geriatric parole eligibility." (*Id.* ¶ 22.) Plaintiff

2

alleges that the law took effect in August of 2008 and "applied prospectively to all armed robberies committed on or after this date." (*Id.*)

Plaintiff then claims that, because he was arrested on February 9, 1997, for armed robbery, has served 21 years of his sentence, and is 46 years old, "[h]e is therefore eligible for geriatric parole under Act 790." (*Compl.* ¶ 23.) Plaintiff further asserts:

> In denying Mr. Thomas parole eligibility, the DPSC relied upon Act 1099 and stated that Mr. Thomas must serve 85% of his sentence before becoming eligible for parole. However, <u>parole</u> and <u>good time</u> are clearly distinct forms of statutory release. While Mr. Thomas is ineligible for release on <u>good time</u> until he has served 85% of his sentence, Mr. Thomas' eligibility for geriatric parole is unaffected, as his offense occurred prior to 2008, when the legislature clearly removed armed robbers from geriatric parole eligibility. . . .
>
> In denying his second-step, the Department of Corrections informed Mr. Thomas that pursuant to DPSC Regulation B-04-004 F(2), geriatric parole (Act 790) does not apply to offenders with offense dates committed on or after January 1, 1997. Clearly, DPSC has arbitrarily modified its internal regulations, as B-04-004F(2) previously provided:
>
>> F. Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.
>>
>> 1) The above provision does not apply to those offenders who are serving a life sentence.
>>
>> 2) Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 when the <u>offense was committed on or after **August 15, 2008.**</u>

(*Id* (emphasis by Plaintiff).)

Plaintiff alleges on information and belief, that "there are other individuals similarly situated to [Plaintiff], who committed an armed robbery prior to August 15, 2008 and are being

3

denied geriatric parole eligibility under Act 790." (*Id.* ¶ 25.) According to Plaintiff, he has "received at least three master prison records that reflected a parole eligibility date in accordance with Act 790." (*Id.* ¶ 26.) Plaintiff claims:

> Because of the inscribing of the master prison record with a parole eligibility release under Act 790, the regulation B-04-004 and the actual practice of the DPSC and the Committee on Parole, a liberty interest has been created. The expectation of the population of armed robbery offenders whose offense dates are between January l, 1997 and August 15, 2008, is that they will receive a fair parole hearing upon reaching the "20/45" provisions of the geriatric parole statute.

(*Id.* ¶ 27.)

Plaintiff next discusses "certain agreements" made between DPSC and counsel for Plaintiff in litigation entitled *David Tell v. Richard Stalder*, Number 541,059, Section 8, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. (*Compl.* ¶¶ 28–32.) Under one agreement, "the outcome of the *Tell* litigation would apply to all prisoners with armed robbery convictions." (*Id.* ¶ 29.) In another, "master records would reflect the Act 790 dates for armed robbery inmates." (*Id.* ¶ 30.) Further, the parties "agreed in the *Tell* litigation that no appeal would be taken from the State District Court ruling in *Tell* and that *Tell* would go final." (*Id.* ¶ 31.) According to Plaintiff, this last agreement "further set[s] up an expectation that the "20/45" practice would continue." (*Id.* ¶ 32.)

Plaintiff then makes allegations about another settlement in *Francis v. Leblanc*, No. 13-5691-JJB-RLB (M.D. La.). (*Compl.* ¶ 33.) Specifically, Plaintiff asserts:

> At issue in this case was that the DPSC had removed parole eligibility from armed robbers whose offenses occurred prior to January l, 1997. As part of the settlement order, the DPSC agreed to restore Act 790 parole eligibility to those offenders whose armed robbery offense occurred prior to January 1, 1997. . . . However, the *Francis* decision pretermitted any decision concerning those offenders convicted of armed robbery between January 1, 1997 and August 15, 2008.

(*Id.*)

4

Plaintiff claims that, for twenty years, he "believed . . . he would be eligible for parole consideration upon attaining the age of 45 and serving 20 years of his sentence" and that he "held this belief because the DPSC repeatedly informed him that this would be the case, and even set his matter for hearing." (*Compl.* ¶ 34.) DPSC, through its Secretary James Leblanc, "is responsible for establishing a parole eligibility date and causing the parole eligibility date to be placed on the offender's master prison record." (*Id.* ¶ 35.) Additionally, the Committee on Parole "is responsible for scheduling a parole hearing for an offender." (*Id.* ¶ 36.)

Plaintiff cites to *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005), for the proposition that a liberty interest for a parole eligibility date "may arise from an expectation or interest created by state laws or policies." (*Id.* ¶ 37.) Plaintiff claims a liberty interest in favor of himself and "any similarly situated individual." (*Id.* ¶ 38.) Specifically, the liberty interest is that, "upon fulfilling the requirements of Act 790 (which [Plaintiff] has done), that the parole eligible armed robbery offender will be given a hearing." (*Id.* ¶ 39.) Plaintiff maintains that this liberty interest is "protected by the 14th Amendment . . . and cannot be arbitrarily withdrawn." (*Id.*) Plaintiff claims a violation of his Fourteenth Amendment right "by cancelling and refusing to reschedule his parole hearing", and Plaintiff further claims this is an "ongoing violation" of his rights because "DPSC continues to misinterpret applicable law and misconstrue the statutes to arbitrarily deny [Plaintiff] a parole hearing to which he is clearly entitled." (*Id.* ¶ 40.) Plaintiff also asserts that his substantive Due Process right was violated by an *ex post facto* application of Act 624 "to remove parole eligibility from those individuals convicted of armed robbery" like Plaintiff "who had a geriatric parole date for many years prior to 2008 and was anticipating that hearing." (*Id.* ¶ 41.)

Plaintiff seeks a declaration of his rights and order:

> 1. That Mr. Thomas' parole eligibility date under Act 790 be restored and reflected on his Master Prison Record;
>
> 2. That Mr. Thomas be placed on the next available Dixon Correctional Institute parole docket, so his case may be heard.

(*Compl.* ¶ 42.) Plaintiff also seeks an "injunction ordering the DPSC and the Committee on Parole to re-set him on the parole docket for hearing." (*Id.* ¶ 43.) Plaintiff claims irreparable injury and seeks attorney's fees. (*Id.* ¶¶ 44–45.) Plaintiff prays for a decree that:

> 1. Parole eligibility is restored as to Mr. Thomas under Louisiana Act 790 of 1990.
>
> 2. That Carson Thomas is restored to the parole docket as promptly as possible and thereafter heard.
>
> 3. That a preliminary and thereafter permanent injunction issue herein ordering the DPSC to maintain a parole eligibility date for Mr. Thomas and ordering the Louisiana Committee on Parole to hold a hearing for Mr. Thomas.

(*Id.* at 15.)

## II. Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading

6

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III. Discussion

Defendant Ranatza raises two main arguments in her short six-page brief (Doc. 11-1). The Court will address each of these arguments in turn.

### A. Sovereign Immunity

#### 1. Parties' Arguments

First, Defendant contends that Plaintiff has improperly named the State of Louisiana (through the Louisiana State Board of Parole) as a Defendant and that, as a result, Plaintiff's claim is barred by the Eleventh Amendment. (Doc. 11-1 at 3.) The State of Louisiana has not waived sovereign immunity, and this protection extends to the Louisiana Board of Parole as an arm of the state. (*Id.* at 4.)

Plaintiff responds that he has sued Defendant Ranatza for declaratory and injunctive relief in her official capacity as Chair of the Committee on Parole. (Doc. 17 at 3.) Thus, his claim is not barred by the Eleventh Amendment. (*Id.*) Plaintiff distinguishes the cases Defendant relies upon. (*Id.* at 3–5.)

Defendant filed no reply brief.

#### 2. Relevant Law

"It is clear, of course, that in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984) (citations omitted).

Similarly, "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, [t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 465 U.S. at 101, 104 S. Ct. at 908. (citations and quotations omitted). Accordingly, "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar*

*v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n. 9 (5th Cir. 1991)). "Section 1983 does not waive the states' sovereign immunity[.]" *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n. 7, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979)).

Nevertheless, "[i]n *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity." *Aguilar*, 160 F.3d at 1054. "The [*Ex Parte Young*] Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law." *Id.* (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993)). "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Id.* (citing *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

Phrased another way, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255, 131 S. Ct. 1632, 1639, 179 L. Ed. 2d 675 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)). "The Supreme Court, though it has clarified that Young cannot be extended to permit a suit for equitable monetary restitution from the state treasury for a past breach of a legal duty, *Edelman v. Jordan*, 415 U.S. 651, 662–72, 94 S. Ct. 1347, 1355–60, 39 L. Ed. 2d 662 (1974), has reaffirmed the

9

basic holding of *Young* as to purely prospective relief on numerous occasions. [(citations to numerous cases omitted)]." *Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 920 (5th Cir. 1993).

### 3. Analysis

Defendant urges that Plaintiff cannot bring an action against Louisiana State Board of Parole because it is a state agency. Defendant is, of course, correct. *See Pennhurst*, 465 U.S. at 100, 104 S. Ct. at 908; *Aguilar*, 160 F.3d at 1054 ("Aguilar's original petition demonstrates, however, that he sued TDCJ–ID itself for injunctive relief, not any state official in his or her individual capacity as an agent of the state. And, as an instrumentality of the state, TDCJ–ID is immune from Aguilar's suit on Eleventh Amendment grounds.").

However, Plaintiff correctly asserts in his opposition that he brings this suit against Ranatza in her official capacity and for prospective injunctive and declaratory relief. (*See Compl.* ¶¶ 1–2, 42–44.) This action would thus clearly fall under the *Ex parte Young* exception discussed above. Consequently, Defendant's motion to dismiss Ranatza on this ground is denied.

## B. Exhaustion

### 1. Parties' Arguments

Defendant next argues that, before a prisoner can challenge a single parole hearing as constitutionally defective, that prisoner must exhaust state habeas remedies. (Doc. 11-1 at 4 (citing *Serio v. Members of the La. State Bd. of Pardons*, 821 F.2d 1112, 1117 (5th Cir. 1987).) "This is so even if the result of such a challenge would not entitle the inmate plaintiff to earlier release but would only entitle him to a new hearing with proper procedural protections." (*Id.* (citing *Serio*, *supra*).) Here, Plaintiff seeks orders (1) vacating the October 12, 2016 decision of

the Parole Board that determined he was ineligible for "geriatric parole" and (2) requiring the Parole Board to conduct another hearing during which time the board would be barred from finding the Plaintiff ineligible for "geriatric parole". (*Id.* at 4–5.) Because Plaintiff challenges the specific outcome of his parole proceeding, under *Serio*, he cannot bring his federal action until he pursues his claim in a habeas corpus proceeding in state court. Since Plaintiff has not done so, his claim should be dismissed. Defendant cites to *Hampton v. Louisiana State Parole Bd.*, No. 11-0572, 2011 WL 6936411 (M.D. La. Nov. 18, 2011), *report and recommendation approved*, No. 11-572-BAJ-CN, 2011 WL 6941682 (M.D. La. Dec. 31, 2011), in support of his motion. (*Id.* at 5.)

Plaintiff disputes Defendant's claim that he filed the case "because of an unfavorable outcome at a parole hearing." (Doc. 17 at 5.) According to Plaintiff: "Rather, the issue raise[d] is that he never received a parole hearing to which he was clearly entitled. The issue is that the Parole Board and the DPSC eliminated his right to a parole hearing and relied upon Act. 1099, which did not eliminate geriatric parole for individuals like Mr. Thomas." (*Id.*) Plaintiff distinguishes Defendant's cases by citing to authority for the proposition that, while a "prisoner may not use a § 1983 action to challenge a specific error in the denial of his parole; rather he may use such an action only to make a general challenge to parole procedures." (*Id.* (citing *Jeffrey v. Owens*, 216 F. App'x 396, 397 (5th Cir. 2006); *Wilkinson v. Dotson*, 544 U.S. 74 (2005).)

**2. Legal Standard**

The Supreme Court "has held that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.' " *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S. Ct. 1242, 1245, 161 L. Ed. 2d 253 (2005) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 489,

11

93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); *Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Heck v. Humphrey,* 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); *Edwards v. Balisok,* 520 U.S. 641, 648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997)). "He must seek federal habeas corpus relief (or appropriate state relief) instead." *Id.* The *Wilkinson* court traced the case law on this issue, summarizing it as follows:

> Throughout the legal journey from *Preiser* to *Balisok,* the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks—not where it simply "relates to"—"core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at 1253 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok,* like *Wolff,* demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 544 U.S. at 81–82, 125 S. Ct. at 1247–48.

However, in *Wilkinson*, the Supreme Court found that prisoners had cognizable claims under § 1983 because they sought "relief that [would] render invalid the state procedures used to deny parole eligibility . . . and parole suitability. *Id.*, 544 U.S. at 82, 125 S. Ct. at 1248 (citing *Wolff v. McDonnell*, 418 U.S. 539, 554–55, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Neither of the inmates in *Wilkinson* sought "an injunction ordering his immediate or speedier release into the community," and "a favorable judgment [would] not 'necessarily imply the invalidity of their

12

convictions or sentences.' " *Id.* (citations and alterations omitted). The Supreme Court explained:

> Success for [inmate] Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for [inmate] Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.

*Id.* (citations omitted).

Several Fifth Circuit cases have followed *Wilkinson*. For example, in *Hunter v. Owens*, 375 F. App'x 427 (5th Cir. 2010) (per curiam), the Fifth Circuit vacated a district court's order dismissing an *ex post facto* claim by an inmate challenging the retroactive application of a Texas statute. *Id.* at 429. The Fifth Circuit found that the inmate sought "only prospective injunctive relief requiring that the Parole Board apply the prior parole law of review by a three-member panel to his future parole hearings and requiring Texas to grant him a special parole review." *Id.* The Fifth Circuit also stated: "Because the parole board has the discretion to deny parole, the relief Hunter seeks would not necessarily require immediate or speedier release for Hunter. Therefore, the district court erred in holding that Hunter's claim was precluded by *Heck*." *Id.* (citing *Dotson*, 544 U.S. at 82, 125 S. Ct. 1242); *see also Kyles v. Garrett*, 353 F. App'x 942, 946 (5th Cir. 2009) (per curiam) (reversing granting of summary judgment on inmate claim for prospective injunctive relief based on *Dotson*, and relief upon by *Hunter*).

Conversely, in *Jeffery v. Owens*, 216 F. App'x 396, 397 (5th Cir. 2006) (per curiam), the Fifth Circuit dismissed a complaint for failure to state a claim when the inmate was "not making a general challenge to parole procedures" but rather "alleged a specific error in his case—that the Board wrongly considered arrests which had been expunged to deny him parole." *Id.* at 397.

13

Plaintiff had "sought a declaratory judgment that the consideration of those arrests was error and that the error was the sole reason for the denial of parole." *Id.*

Similarly, in *Hampton*, the magistrate judge recommended dismissal of a claim with respect to plaintiff's revocation proceeding. The plaintiff complained that, in 2010, he had not been told that he would not receive credit for time he spent on supervised release and that, had he known this, he would not have waived his right to a formal revocation hearing before the Parole Board. *Hampton*, 2011 WL 6936411, at *2. Plaintiff also complained of the fact that, in 2011, the Parole Board denied an application for rehearing, allegedly using procedures not in place at the time he committed his original offense. *Id.*

In recommending dismissal of plaintiff's claims, the magistrate judge explained: " '[I]f a prisoner challenges a single hearing as constitutionally defective, he must first exhaust state habeas remedies." *Id.* at *3 (citing *Serio v. Members of the Louisiana State Bd. of Pardons*, 821 F.2d 1112, 1117 (5th Cir. 1987)). "This is so even if the result of such a challenge would not entitle the plaintiff to earlier release but would only entitle him to a new hearing with proper procedural protections." *Id.* (citing *Serio*, *supra*). The magistrate judge concluded that the claim warranted dismissal because Plaintiff sought an injunction "voiding his waiver of a formal parole hearing, vacating the decision of the Parole Board which revoked his supervised release, and granting him a 'new revocation hearing conducted under constitutionally proper procedures." *Id.* The magistrate concluded: "As such, he challenges the specific outcome of his parole revocation proceedings and seeks a new hearing in connection therewith. Pursuant to *Serio*, the plaintiff must first pursue this claim in a habeas corpus proceeding in state court and may not pursue federal habeas corpus relief until he has exhausted his state court remedies." *Id.* Since Plaintiff had not exhausted these remedies, his claim was dismissed. *Id.*

14

Nevertheless, in *Hampton*, the magistrate judge went on to liberally construe plaintiff's claim "as a challenge to the Parole Board's general procedures" under the Due Process and *Ex Post Facto* clauses. *Id.* (citing *Jeffrey*, *supra*). The magistrate judge ultimately recommended dismissal of both claims for failure to state a claim, and the district judge approved this recommendation. *Id.*, 2011 WL 6936411, at *3–4 (M.D. La. Nov. 18, 2011), *report and recommendation approved*, 2011 WL 6941682 (M.D. La. Dec. 31, 2011).

### 3. Analysis

Here, construing the *Complaint* in a light most favorable to Plaintiff, the Court finds that, as in *Wilkinson* and *Hunter*, Plaintiff is making an attack on the general parole procedures and not on the specific outcome of his parole hearing. In the *Complaint*, Plaintiff alleges that, in October 2016, he "was brought before the Committee on Parole for his initial parole hearing pursuant to Act 790" but that, "[u]pon entering the parole hearing, [he] was informed – for the first time – that he is not parole eligible under Act 790 and must serve 85% of his sentence before becoming parole eligible, pursuant to Act 1099." (*Compl.* ¶ 8.) Plaintiff specifically alleges: "Clearly, DPSC has arbitrarily modified its internal regulations" such that the department is improperly prohibiting geriatric parole based on an incorrect interpretation of Act 1099. (*Compl.* ¶ 24.) Plaintiff also specifically cites to "other individuals similarly situated to" him that are improperly being denied parole under similar circumstances. (*Id.* ¶ 25.) Plaintiff claims a violation of his Fourteenth Amendment right "by cancelling and refusing to reschedule his parole hearing" and that this is an "ongoing violation" of his rights because "DPSC continues to misinterpret applicable law and misconstrue the statutes to arbitrarily deny [Plaintiff] a parole hearing to which he is clearly entitled." (*Id.* ¶ 40.) Plaintiff also alleges a violation of his substantive Due Process rights from an *ex post facto* application of Act 624 "to remove parole

15

eligibility from those individuals convicted of armed robbery" like Plaintiff "who had a geriatric parole date for many years prior to 2008 and was anticipating that hearing." (*Id.* ¶ 41.) Critically, Plaintiff seeks an order restoring his parole *eligibility* and providing him with a hearing. (*Compl.* ¶¶ 42–43 & prayer).

Thus, this case is much closer to *Wilkinson* and *Hunter* than to *Jeffrey*. Like the plaintiffs in *Wilkinson*, Plaintiff is *not* seeking an order for "his immediate or speedier release into the community." *Id.*, 544 U.S. at 82, 125 S. Ct. at 1248. At most, like the *Wilkinson* inmate, Plaintiff will obtain "a new parole hearing at which [Louisiana] parole authorities may, in their discretion, decline to shorten his prison term." *Id.*; *see also Hunter*, 375 F. App'x at 429 ("Because the parole board has the discretion to deny parole, the relief Hunter seeks would not necessarily require immediate or speedier release for Hunter. Therefore, the district court erred in holding that Hunter's claim was precluded by *Heck*."); *Kyles v. Garrett*, 353 F. App'x at 946 ("Kyles seeks relief that will 'render invalid the state procedures used to deny ... parole suitability' but does not seek 'an injunction ordering his immediate or speedier release into the community.' Like the *Dotson* plaintiff, success for Kyles 'means at most a new parole hearing at which [Texas] parole authorities may, in their discretion, decline to shorten his prison term.' Under *Dotson*, Kyles is not precluded by *Heck* from litigating his § 1983 claim." (internal citations to *Dotson* omitted)). Moreover, unlike *Jeffrey*, when the Plaintiff complained of the specific error of wrongfully considering arrests to deny him parole, *id.*, 216 F. App'x at 397, here Plaintiff attacks the facts that he was found to be ineligible for parole and was denied a hearing in the first place.

Ultimately, success for the Plaintiff in this case would not "necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82, 125 S. Ct. at 1247–48.

Plaintiff seeks prospective injunctive and declaratory relief; he would simply be deemed eligible for parole and given a new hearing, at which time the Parole Board could, in its discretion, deny Plaintiff the relief he seeks. Consequently, under *Wilkinson*, Defendant's motion to dismiss for failure to exhaust must be denied.[1]

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(6) Motion to Dismiss* (Doc. 11) by filed by Defendant Shery Ranatza is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 7, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[1] The Court specifically notes that it is making no finding as to whether Plaintiff has stated a claim under the Due Process Clause or *Ex Post Facto* Clause. Neither party addressed this issue in briefing, so the Court's decision is based solely on whether Plaintiff needs to exhaust state administrative remedies before bringing this action.