UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARSON THOMAS, DOC 392537

CIVIL ACTION

VERSUS

NO. 18-496-JWD-RLB

JAMES M. LEBLANC, SECRETARY OF
THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,
ET AL.

### RULING AND ORDER

This matter comes before the Court on the second *Rule 12(b)(6) Motion to Dismiss* (Doc. 20) filed by Defendant Sheryl Ranatza. Plaintiff Carson Thomas opposes the motion. (Doc. 21.) No reply was filed. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted.

I.   **Relevant Factual Background**

The following allegations are taken from the *Complaint for Declaratory and Injunctive Relief* ("*Complaint*" or "*Compl.*") (Doc. 1). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff is an inmate housed at Dixon Correctional Institute. (*Compl.* at 1.) Plaintiff brings this § 1983 action seeking declaratory and injunctive relief "alleging violation of Due Process, *ex post facto* application of law and of a liberty interest cognizable under the United States Constitution and created by the State of Louisiana." (*Id.* ¶ 2.)

Defendants in this action are James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), and "The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza." (*Id.* ¶ 1.) Only Ranatza brings this motion.

On February 9, 1997, Plaintiff was arrested for one count of armed robbery. (*Compl.* ¶¶ 4–5.) Plaintiff was convicted and sentenced to 50 years with credit for time served. (*Id.* ¶ 5.) Plaintiff's sentence was later amended to 30 years with credit for time served. (*Id.* ¶ 5.) Plaintiff has served 21 years and is currently 46 years old. (*Id.* ¶ 7.)

"For most of the past 20 years," Plaintiff's "master prison records reflect[ed] a parole eligibility date of 2017". (*Id.* ¶ 7.) This is because of Act 790, also known as "geriatric parole," which "provides an offender serving 30 years or greater shall be eligible for parole upon serving 20 years of his sentence and attaining the age of 45." (*Id.* ¶ 7.)

On October 12, 2016, Plaintiff "was brought before the Committee on Parole for his initial parole hearing pursuant to Act 790." (*Compl.* ¶ 8.) "Upon entering the parole hearing, Mr. Thomas was informed – for the first time – that he is not parole eligible under Act 790 and must serve 85% of his sentence before becoming parole eligible, pursuant to Act 1099." (*Id.* ¶ 8.)

Plaintiff devotes an entire section of his Complaint to the passage and legislative history of Act 60 of 1987 and Act 760 of 1990. (*Compl.* ¶¶ 9–18.) This section describes the development of "geriatric parole" in Louisiana. (*Id.*)

This section then describes Act 1099 of 1995, "which changed the rate at which offenders earned good time for crimes of violence." (*Compl.* ¶ 19.) Act 1099 "specifically decreased the rate at which prisoners earned good time for crimes of violence, requiring that for such offenses the offender must serve 85% of his sentence before being eligible for release on good time." (*Id.*) Plaintiff then details the legislative history of this act. (*Id.* ¶¶ 20–21.)

Next, the *Complaint* describes Act 624 of 2008, which "specifically removed those individuals convicted of armed robbery from geriatric parole eligibility." (*Id.* ¶ 22.) Plaintiff

2

alleges that the law took effect in August of 2008 and "applied prospectively to all armed robberies committed on or after this date." (*Id.*)

Plaintiff then claims that, because he was arrested on February 9, 1997, for armed robbery, has served 21 years of his sentence, and is 46 years old, "[h]e is therefore eligible for geriatric parole under Act 790." (*Compl.* ¶ 23.) Plaintiff further asserts:

> In denying Mr. Thomas parole eligibility, the DPSC relied upon Act 1099 and stated that Mr. Thomas must serve 85% of his sentence before becoming eligible for parole. However, parole and good time are clearly distinct forms of statutory release. While Mr. Thomas is ineligible for release on good time until he has served 85% of his sentence, Mr. Thomas' eligibility for geriatric parole is unaffected, as his offense occurred prior to 2008, when the legislature clearly removed armed robbers from geriatric parole eligibility. . . .
>
> In denying his second-step, the Department of Corrections informed Mr. Thomas that pursuant to DPSC Regulation B-04-004 F(2), geriatric parole (Act 790) does not apply to offenders with offense dates committed on or after January 1, 1997. Clearly, DPSC has arbitrarily modified its internal regulations, as B-04-004F(2) previously provided:
>
>> F. Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.
>>
>> 1) The above provision does not apply to those offenders who are serving a life sentence.
>>
>> 2) Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 when the offense was committed on or after **August 15, 2008.**

(*Id* (emphasis by Plaintiff).)

Plaintiff alleges on information and belief, that "there are other individuals similarly situated to [Plaintiff], who committed an armed robbery prior to August 15, 2008, and are being

3

denied geriatric parole eligibility under Act 790." (*Id.* ¶ 25.) According to Plaintiff, he has "received at least three master prison records that reflected a parole eligibility date in accordance with Act 790." (*Id.* ¶ 26.) Plaintiff claims:

> Because of the inscribing of the master prison record with a parole eligibility release under Act 790, the regulation B-04-004 and the actual practice of the DPSC and the Committee on Parole, a liberty interest has been created. The expectation of the population of armed robbery offenders whose offense dates are between January l, 1997 and August 15, 2008, is that they will receive a fair parole hearing upon reaching the "20/45" provisions of the geriatric parole statute.

(*Id.* ¶ 27.)

Plaintiff next discusses "certain agreements" made between DPSC and counsel for Plaintiff in litigation entitled *David Tell v. Richard Stalder*, Number 541,059, Section 8, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. (*Compl.* ¶¶ 28–32.) Under one agreement, "the outcome of the *Tell* litigation would apply to all prisoners with armed robbery convictions." (*Id.* ¶ 29.) In another, "master records would reflect the Act 790 dates for armed robbery inmates." (*Id.* ¶ 30.) Further, the parties "agreed in the *Tell* litigation that no appeal would be taken from the State District Court ruling in *Tell* and that *Tell* would go final." (*Id.* ¶ 31.) According to Plaintiff, this last agreement "further set[s] up an expectation that the "20/45" practice would continue." (*Id.* ¶ 32.)

Plaintiff then makes allegations about another settlement in *Francis v. Leblanc*, No. 13-5691-JJB-RLB (M.D. La.). (*Compl.* ¶ 33.) Specifically, Plaintiff asserts:

> At issue in this case was that the DPSC had removed parole eligibility from armed robbers whose offenses occurred prior to January l, 1997. As part of the settlement order, the DPSC agreed to restore Act 790 parole eligibility to those offenders whose armed robbery offense occurred prior to January 1, 1997. . . . However, the *Francis* decision pretermitted any decision concerning those offenders convicted of armed robbery between January 1, 1997 and August 15, 2008.

(*Id.*)

4

Plaintiff claims that, for twenty years, he "believed . . . he would be eligible for parole consideration upon attaining the age of 45 and serving 20 years of his sentence" and that he "held this belief because the DPSC repeatedly informed him that this would be the case, and even set his matter for hearing." (*Compl.* ¶ 34.)  DPSC, through its Secretary James Leblanc, "is responsible for establishing a parole eligibility date and causing the parole eligibility date to be placed on the offender's master prison record." (*Id.* ¶ 35.)  Additionally, the Committee on Parole "is responsible for scheduling a parole hearing for an offender." (*Id.* ¶ 36.)

Plaintiff cites to *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005), for the proposition that a liberty interest for a parole eligibility date "may arise from an expectation or interest created by state laws or policies." (*Id.* ¶ 37.)  Plaintiff claims a liberty interest in favor of himself and "any similarly situated individual." (*Id.* ¶ 38.)  Specifically, the liberty interest is that, "upon fulfilling the requirements of Act 790 (which [Plaintiff] has done), that the parole eligible armed robbery offender will be given a hearing." (*Id.* ¶ 39.)  Plaintiff maintains that this liberty interest is "protected by the [Fourteenth] Amendment . . . and cannot be arbitrarily withdrawn." (*Id.*)  Plaintiff claims a violation of his Fourteenth Amendment right "by cancelling and refusing to reschedule his parole hearing[,]" and Plaintiff further claims this is an "ongoing violation" of his rights because "DPSC continues to misinterpret applicable law and misconstrue the statutes to arbitrarily deny [Plaintiff] a parole hearing to which he is clearly entitled." (*Id.* ¶ 40.)  Plaintiff also asserts that his substantive Due Process right was violated by an *ex post facto* application of Act 624 "to remove parole eligibility from those individuals convicted of armed robbery" like Plaintiff "who had a geriatric parole date for many years prior to 2008 and was anticipating that hearing." (*Id.* ¶ 41.)

Plaintiff seeks a declaration of his rights and order:

5

> 1. That Mr. Thomas' parole eligibility date under Act 790 be restored and reflected on his Master Prison Record;
>
> 2. That Mr. Thomas be placed on the next available Dixon Correctional Institute parole docket, so his case may be heard.

(*Compl.* ¶ 42.) Plaintiff also seeks an "injunction ordering the DPSC and the Committee on Parole to re-set him on the parole docket for hearing." (*Id.* ¶ 43.) Plaintiff claims irreparable injury and seeks attorney's fees. (*Id.* ¶¶ 44–45.) Plaintiff prays for a decree that:

> 1. Parole eligibility is restored as to Mr. Thomas under Louisiana Act 790 of 1990.
>
> 2. That Carson Thomas is restored to the parole docket as promptly as possible and thereafter heard.
>
> 3. That a preliminary and thereafter permanent injunction issue herein ordering the DPSC to maintain a parole eligibility date for Mr. Thomas and ordering the Louisiana Committee on Parole to hold a hearing for Mr. Thomas.

(*Id.* at 15.)

## II.     Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

7

### III. Discussion

#### A. Successive Motion to Dismiss

##### 1. Parties' Argument

Plaintiff contends that Defendant is procedurally barred from filing "successive" Rule 12(b)(6) motions. (Doc. 21 at 3-4.) Plaintiff states that because Defendant previously filed a 12(b)(6) motion she is barred under Federal Rule of Civil Procedure 12(g)(2) from filing an additional motion to dismiss for failure to state a claim before she files an answer. (Doc. 21 at 3.) Specifically, Plaintiff argues this is not allowed because the "defenses urged in this successive Rule 12 motion were available to Defendant at the time of its initial filing." (*Id.*) Defendant does not respond to this argument.

##### 2. Relevant Law

Rule 12(g)(2) of the Federal Rules of Civil Procedure states, "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) provides: "Failure to state a claim under which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by motion under Rule 12(c); or (C) at trial."

"[D]istrict courts have struggled with the question of whether a party may raise a previously available argument in a successive motion to dismiss for failure to state a claim under Rule 12(b)(6) before first filing a responsive pleading." *Albers v. Board of County Com'rs of Jefferson Cnty, Co.*, 771 F.3d 697, 702 (10th Cir. 2014). Some district courts follow a "technical approach" and strictly construe the rule's requirements to not allow new arguments in successive

motions to dismiss on the same operative complaint. *See Albers*, 771 F.3d at 702 n.9 (collecting cases); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1392 n.6 (3d. 2019) (collecting cases). Other district courts have followed a "permissive approach" and have accepted subsequent motions on discretionary grounds. *See F.T.C. v. Innovative Marketing, Inc.*, 654 F. Supp. 2d 378, 383 (D. Md. 2009) (collecting cases).

Courts that have followed the "technical approach" reason that it avoids cumulative pretrial motions. *See Satkar Hospitality Inc. v. Cook County Bd. of Review*, No. 10-C-6682, 2011 WL 21822106 (N.D. Ill. Jun. 2, 2016) ("[D]efendants' filing of successive motions to dismiss frustrates Rule 12's aims of simplifying and expending the adjudication of pre-trial motions."). Additionally, when Rule 12(g) was amended in 1966 to require filling all pre-trial motions together it was done to avoid "piecemeal consideration of a case." Fed. R. Civ. P. 12(g) (advisory committee's note to 1966 amendment.). This Court has previously taken the "technical approach":

> Although Rule 12(h)(2) preserves Rule 12(b)(6) in certain instances, this case is not one of those instances. The second Motion to Dismiss is not in response to any pleading allowed or ordered under Rule 7(a); rather, it is in response to the Court's Ruling and Order granting in part and denying in part [Defendant]'s first motion to dismiss. Additionally, the second Motion to Dismiss is not raised by a Rule 12(c) motion for judgment on the pleadings, and it is not being raised at trial. *See* Fed. R. Civ. P. 12(h)(2). Therefore, [Defendant] is not permitted to make another Rule 12(b)(6) motion raising his defenses or objections because they were readily available to him, but omitted from his first motion. For this reason, the second motion is denied.

*Colbert v. City of Baton Rouge/Parish of East Baton Rouge*, No. 17-28, 2018 WL 3430689 (M.D. La. Jul. 16, 2018).

Courts that follow the "permissive approach" argue that their approach would prevent undue delay. *See In re Opus East, L.L.C.*, 480 B.R. 561, 570 (Bankr.D.Del. 2012) ("[A] hyper-technical interpretation of the rules resulting in disallowance of the Defendants' [successive]

9

12(b)(6) motion…would almost assuredly add time and delay because the Defendants will most likely raise the arguments later."). "Such a permissive reading has been justified as comporting with the general spirt of the rules as promoting the interest of efficiency." *Innovative Marketing*, 654 F. Supp. 2d at 383-84; *See* Fed. R. Civ. P. 1 (stating the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every actions and proceeding."); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1392 (3d ed. 2004) ("Since the basic purpose of Rule 12(h)(2) probably is to preserve the defenses, rather than to delimit the precise timing of their assertion, this [more permissive] approach seems sound and within the spirit, if not the letter, of the provision.").

The Seventh Circuit has held "Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." *Ennenga v. Starns*, 667 F.3d 766, 773 (7th Cir. 2012). However, the Tenth Circuit has labeled the *Ennenga* decision as "problematic" because the Seventh Circuit's "reasoning fails to address the language from Rule 12(h)(2) that arguably limits a party to presenting those arguments in a pleading, a motion for judgment on the pleading, or at trial." *Albers*, 771 F.3d at 703.

### 3. Analysis

Accordingly, this Court finds the "permissive approach" to be more persuasive and will allow Defendant's *Motion to Dismiss* to proceed. Although it is not clear whether the text of the Rules contemplate successive Rule 12(b)(6) motions, the spirit of the law allows it in this case. Denying this motion would add undue delay, as Defendant could attach the same motion to her answer. *See* Fed. R. Civ. P. 12(h)(2) (allowing a motion for failure to state a claim upon which relief can be granted to be raised in an answer pursuant to Rule 7(a).).

Nevertheless, the Court notes that while it is allowing successive motions to dismiss in this case, successive motions will not always be permitted in every case. If the Court finds that a defendant is submitting the successive motions for the purpose of delay or to frustrate the Court, the motion would be denied and sanctions could be imposed. *See* Fed. R. Civ. P. 11(b)(1).

### B. Due Process Clause

#### 1. Summary of Ruling

Preliminarily, this Court notes that Plaintiff's *ex post facto* claim has been mislabeled. It appears from the pleading that Plaintiff and Defendant agree the 1997 version of La. R.S. § 15:574.4 applies temporally, but the parties disagree over which substantive subsection of the 1997 version of §15:574.4 will determine whether Plaintiff is eligible for parole. Accordingly, this Court will examine Plaintiff's Due Process claim in two steps. First, this Court will examine whether Louisiana law creates a right to parole consideration. Second, this Court will examine § 15:574.4 to determine whether Plaintiff has served enough time to secure his right to parole consideration. For the foregoing reasons, this Court finds that Louisiana law does create a right to parole consideration, but Plaintiff has not served the requisite amount of time to be considered for parole.

#### 2. Right to Parole Consideration

##### a. Parties' Arguments

Defendant argues that Plaintiff has failed to state a claim for which relief can be granted under the Fourteenth Amendment because he has no constitutionally protected liberty interest. (Doc. 20-1 at 3.) Because neither federal nor Louisiana law create a liberty interest in parole that is protected by the Due Process Clause, Defendant contends that Plaintiff is not entitled to challenge the parole procedures at issue. (*Id*. at 4.)

11

Plaintiff disputes Defendant's characterization of law. Specifically, Plaintiff argues that although he does not have a liberty interest in being released on parole, he does have a liberty interest in having a parole hearing. (Doc. 21 at 4.) Therefore, the Parole Committee's refusal to have a parole hearing, not an unfavorable outcome at a parole hearing, is the basis of Plaintiff's Due Process claim. (*Id*.) Plaintiff contends that "Defendants used a good time statute to alter Mr. Thomas's parole eligibility date," and therefore, by using the wrong statute, Defendant deprived Plaintiff of his interest in a parole hearing. (*Id*. at 5.) Finally, Plaintiff states that a similar deprivation of due process is occurring throughout Louisiana to any person similarly situated to Plaintiff. (*Id*. at 6.)

### b.  Relevant Law

State prisoners are entitled to protection under the Due Process Clause only when an official action infringes upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). State convicts, however, do not have a federally guaranteed constitutional right to conditional release before the expiration of their valid sentences. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100 (1979) (holding that a state statute which "provides no more than a mere hope a benefit will be obtained…is not protected by due process."). Additionally, the Fifth Circuit has previously held that "the Louisiana parole release statues do not give rise to a constitutionally protected liberty interest in parole release, and thus, that prisoners are not entitled to challenge the procedures employed

during their parole hearing under the Due Process Clause." *Stevenson v. Louisiana Bd. of Parole*, 265 F.3d 1060 (5th Cir. 2001) (per curiam).

Although Louisiana law does not create a general right to early release, the Louisiana Supreme Court has held that *consideration* for parole implicates a statutory right that is separate from release. *See Bosworth v. Whitley*, 627 So. 2d 629 (La. 1993)[1]. The Louisiana Supreme Court stated:

> [I]t is apparent that the Louisiana parole statutes do not create an expectancy of release or liberty interest in general, or for those with life terms in particular. Inmates meeting standards contained in the law do have a statutory right to parole consideration, but the Parole Board has full discretion when passing on applications for early release.

*Id.* at 633; *see also Damone v. Whitley*, 96-0635 (La. App. 1 Cir. 5/9/97); 694 So. 2d 1205, 1207 ("Prisoners meeting the statutory requirements have a right to parole consideration, but the parole board has full discretion when passing on applications for early release."). However, "the right to be considered for parole is a substantial one, it is not bestowed on a prisoner until statutory requirements are met." *Damone*, 694 So. 2d at 1207 (citing *State ex rel. Woodward v. Bd. of Parole*, 155 La. 699, 99 So. 534, 536 (1924)).

### c. Analysis

The Louisiana Supreme Court recognized that "[i]nmates meeting standards contained in the law do have a statutory right to parole consideration[.]" *Bosworth*, 627 So. 2d at 633. The right to consideration is separate from the right to be released on parole. Defendant only argued that prisoners have no right to parole release or challenging parole procedures in a hearing, and therefore, this Court finds Defendant's argument unpersuasive. However, deprivation of this statutory right to consideration would constitute a due process violation if, as will be discussed

---

[1] The Court finds this case is the controlling law, although neither Plaintiff nor Defendant cited it in briefing.

13

below, Plaintiff can show that he has met all of the statutory requirements to be considered for parole. *See Damone*, 694 So. 2d at 1207. Therefore, if Plaintiff has met the requirements under La. R.S. 15:574.4, Defendant must consider Plaintiff for parole, but Defendant is under no obligation to grant release because prisoners have no right to early release.

This Court stresses that this holding is a narrow one. Louisiana parole law does not create a constitutionally protected liberty interest in parole release. *See Stevenson*, 265 F.3d 1060. Additionally, Louisiana parole does not allow prisoners to challenge the procedures employed during a hearing under the Due Process Clause. *Id*. However, a prisoner does have a statutory right in simply being considered for parole if he has met the requirements set forth in Louisiana law.

### 3. Statutory Construction

#### a. Parties' Arguments

Defendant argues that Plaintiff was never eligible under the "geriatric parole" provision of La. R.S. § 15:574.4 because he has not served eighty-five percent of his sentence. (Doc. 20-1 at 5.) In support, Defendant traces the legislative history of § 15:574.4. Defendant contends that Act 191 of 1968 was when "geriatric parole" was introduced to Louisiana, and it provided parole eligibility for persons who were sentence to thirty or more years, who had served at least twenty years, and had attained the age of sixty. (*Id*. at 6.) Next, Defendant states that in 1990, the legislature reduced the age requirement from sixty to forty. (*Id*. at 6-7.) Of particular note, Defendant argues, is Act 1099 of 1995. Defendant contends that this act requires that individuals convicted of armed robbery after January 1, 1997, must serve at least eighty-five percent of their sentence before they would be eligible for any type of parole. (*Id*. at 7.) Therefore, Defendant

14

argues since Plaintiff was arrested on February 9, 1997, he must serve at least eighty-five percent of his sentence before being eligible for parole. (*Id*. at 8.)

In opposition, Plaintiff also traces the legislative history of La. R.S. § 15:574.4. Plaintiff, citing a law review article, argues that "[t]here is no doubt that the legislature intended Act 60 [of 1987], and its progeny to apply to individual convicted of armed robbery." (Doc. 21 at 7-8.) Plaintiff argues that the law review article as well as two cases show that DPSC has historically granted parole to individuals convicted of armed robbery before January 1, 1997. (*Id*. at 8.) Further, Plaintiff contends that Act 1099 of 1995 was never intended to affect geriatric parole, but instead, the Act was only meant to be applied to the rate at which inmates earned good time credit for certain crimes. (*Id*.) In support, Plaintiff cites to minutes from the legislature. (*Id*. at 8-9.) Therefore, Plaintiff asserts that based on the historic practice of granting parole to individuals convicted of armed robbery and the legislative intent of Act 1099, Plaintiff should be considered for geriatric parole. Finally, Plaintiff argues that Act 624 of 2008 which specifically added that geriatric parole shall not apply to a person convicted of armed robbery is further evidence geriatric parole was available to persons convicted before 2008. (*Id*. at 9.)

### b. Relevant Law

In Louisiana, "[t]he sources of law are legislation and custom." La. Civ. Code art. 1. Further, "[l]egislation is a solemn expression of legislative will." La. Civ. Code art. 2.

The Louisiana Legislature has provided certain principles of statutory construction which the Court must follow. *See* La. Civ. Code arts. 9–13.  Specifically, in interpreting a Civil Code article or statute, if the wording of a law is clear and unambiguous and does not lead to absurd consequences, the letter of the law should not be disregarded. La. Civ. Code art. 9; *see also* La. R.S. § 1:4. Conversely, "[w]hen the language is susceptible of different meanings, it must be

interpreted as having a meaning that best conforms to the purpose of the law." La. Civ. Code art. 10. Additionally, "[l]aws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13.

Additionally, the Louisiana Supreme Court has also articulated principles of statutory construction:

> [I]t is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction.

*Moss v. State*, 05-1963 (La. 4/4/06), 925 So. 2d 1185, 1196 (internal quotations omitted).

However, when the meaning of the law cannot be ascertained through examination of the text, the Court must determine the legislature's intent. "The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter…, and where the new article or statute is worded differently from the preceding law, the legislature is presumed to have intended to change the law." La. R.S. § 24:177.

### c. Analysis

Here, this Court finds that two provisions of La. R.S. § 15:574.4, as they existed in 1997, are in conflict. The first provision concerning "geriatric parole" provides:

> *Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary*, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years of the term or terms of imprisonment in actual custody and upon reaching the age of forty-five. This provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years.

16

La. R.S. § 15:574.4(A)(3) (1990) (emphasis added; amended 2008). The second provision limiting parole for persons convicted of a crime of violence provides:

> No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provisions of R.S. 14:64. No prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years. No prisoner may be paroled while there is pending against him any indictment or information for any crime suspected of having been committed by him while a prisoner. *Notwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least eighty-five percent of the sentence imposed, before being eligible for parole.* The victim or victim's family shall be notified whenever the offender is to be released.

La. R.S. § 15:574.4(B) (1995) (emphasis added; amended 2008)[2]. Both laws provide "notwithstanding any other provisions of law to the contrary" that they should apply. This creates a conflict in determining what the operative law of § 15:574.4 should be. Therefore, to remedy this conflict, the Court will have to use principles of statutory construction articulated by the Louisiana legislature to determine if Plaintiff has fulfilled his statutory requirements to be considered for parole. Accordingly, the Court will address parties' arguments in turn and then apply the rules of statutory construction.

The Court finds Plaintiff's argument that "[t]he minutes from House Bill 146 clearly show that the purpose of this bill was to affect good time only" is unpersuasive. Putting aside the issue of whether the intent of two legislators from one chamber of the legislature can determine legislative intent, the words of § 15:574.4 do not contain the phrase "good time." Therefore, if Act 1099 of 1995 was to affect only good time, the language of the statute would have indicated it. *See* La. R.S. § 24:177.B.(1) ("The text of the law is the best evidence of legislative intent.").

---

[2] The Court notes that although La. R.S. § 15:574.4.(B) provides "No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provisions of R.S. 14:64," the provision which provides "Notwithstanding any other provisions of law to contrary" is what is at issue.

17

Additionally, the Court finds that Plaintiff's contention that § 15:574.4 did not apply persons convicted of armed robbery in 1997 because Act 624 of 2008 amended the law to specifically provide for that is also unpersuasive. Louisiana Revised Statute § 24:177 provides that a court may look to "the circumstances under which [the legislation] was enacted" to "determine legislative intent." Thus, this Court is only concerned with the intent of the 1995 legislature which enacted Act 1099, not the intent of a future legislature which would subsequently alter the statute.

Since the two provisions of § 15:574.4 in conflict begin with "[n]otwithstanding any other law to the contrary," the Court finds that the law enacted later should govern because to hold otherwise would render that provision without meaning. *See Moss*, 925 So. 2d at 1196. Indeed, the legislature could not have intended to disregard a provision of law that had not yet been enacted. Additionally, this conforms with statutory interpretation principles set out by the Louisiana legislature. *See*. La. R.S. § 24:177.C. ("The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter."). Accordingly, this Court finds that because Act 1099 of 1995 was passed subsequent to the provision's governing "geriatric parole," that law must govern "[n]otwithstanding any other provisions of the law to the contrary." Plaintiff must serve 85% of his time pursuant to La. R.S. § 15:574.4.B. before he will have a statutory right to parole consideration.

## IV.   Leave to Amend

Federal Rules of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely," further "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted). However, "leave to amend is in no way automatic, but the district court must possess a

18

'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.* 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Here, the Court finds that any amendment would be futile. As discussed above, the shortcomings in Plaintiff's complaint stem from statutory interpretation. Thus, there is no avenue in which Plaintiff can prevail under governing law. For this reason, the Court will deny Plaintiff leave to amend and dismiss his claims with prejudice.

**V.    Conclusion**

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(6) Motion to Dismiss* (Doc. 20) by filed by Defendant Shery Ranatza is **GRANTED**, and Plaintiff's claims against Defendant are hereby **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on October 30, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**