UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARSON THOMAS | CIVIL ACTION NO. 18-496-JWD-RLB |
| VERSUS | JUDGE JOHN W. deGRAVELLES |
| JAMES M. LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL. | MAG. JUDGE RICHARD L. BOURGEOIS, JR. |

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Dismiss* (Doc. 31) filed by Defendant James Le Blanc ("Defendant" or "Le Blanc"). Plaintiff Carson Thomas ("Plaintiff" or "Thomas") opposes the motion. (Doc. 33). No reply was filed. The Court has carefully considered the law, the facts in the record, and the arguments and submission of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted.

**I.    Background**

The following allegations are taken from the *Complaint for Declaratory and Injunctive Relief* ("Complaint"). (Doc. 1). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.,* 764 F.3d 500, 502-03 (5th Cir. 2014).

Plaintiff is an inmate housed at Dixon Correctional Institute. (Doc. 1, at 1). Plaintiff brings this Section 1983 action seeking declaratory and injunctive relief "for [a] violation of [his] civil rights" and alleging a "violation of Due Process, *ex post facto* application of law and of a liberty interest cognizable under the United States Constitution and created by the State of Louisiana." (Doc. 1, at 2).

1

Defendants in this action are James Le Blanc,[1] Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), and "The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza" ("Defendant Ranatza"). (Doc. 1, at 1). Only Defendant Le Blanc brings the instant motion.

On February 9, 1997, Plaintiff was arrested for one count of armed robbery. (Doc. 1, at 2-3). Plaintiff was convicted and sentenced to 50 years with credit for time served. (Doc. 1, at 3). Plaintiff's sentence was later amended to 30 years with credit for time served. (*Id.*). Plaintiff has served 21 years and is currently 46 years old. (*Id.*).

"For most of the past 20 years," Plaintiff's "master prison records reflect[ed] a parole eligibility date of 2017". (*Id.*). This is based upon Act 790, which provides that "an offender serving 30 years or greater shall be eligible for parole upon serving 20 years of his sentence and attaining the age of 45." (*Id.*). The quoted language is referred to as the "geriatric parole" provision.

On October 12, 2016, Plaintiff "was brought before the Committee on Parole for his initial parole hearing pursuant to Act 790." (*Id.*). "Upon entering the parole hearing, Mr. Thomas was informed – for the first time – that he [was] not parole eligible under Act 790 and must serve 85% of his sentence before becoming parole eligible, pursuant to Act 1099." (*Id.*).

Plaintiff devotes an entire section of his *Complaint* to the passage and legislative history of Act 60 of 1987 and Act 760 of 1990. (Doc. 1, at 4-7). This section of the *Complaint* describes the development of "geriatric parole" in Louisiana. (*Id.*).

---

[1] Defendant James "LeBlanc" is named in the *Complaint*. Defendant James "Le Blanc" brings the instant motion. For the purposes of this Ruling, the Court will adopt the spelling of "Le Blanc" utilized by his counsel in briefing the subject motion.

The *Complaint* then describes Act 1099 of 1995, "which changed the rate at which offenders earned good time for crimes of violence." (Doc. 1, at 7). Act 1099 "specifically decreased the rate at which prisoners earned good time for crimes of violence, requiring that for such offenses the offender must serve 85% of his sentence before being eligible for release on good time." (*Id.*). Plaintiff then details the legislative history of this act. (Doc. 1, at 8).

Next, the *Complaint* describes Act 624 of 2008, which "specifically removed those individuals convicted of armed robbery from geriatric parole eligibility." (*Id.*). Plaintiff alleges that the law took effect in August of 2008 and "applied prospectively to all armed robberies committed on or after this date." (*Id.*).

Plaintiff claims that because he was arrested for armed robbery on February 9, 1997, has served 21 years of his sentence, and is 46 years old, "[h]e is therefore eligible for geriatric parole under Act 790." (Doc. 1, at 9). Plaintiff further asserts:

> In denying Mr. Thomas parole eligibility, the DPSC relied upon Act 1099 and stated that Mr. Thomas must serve 85% of his sentence before becoming eligible for parole. However, parole and good time are clearly distinct forms of statutory release. While Mr. Thomas is ineligible for release on good time until he has served 85% of his sentence, Mr. Thomas' eligibility for geriatric parole is unaffected, as his offense occurred prior to 2008, when the legislature clearly removed armed robbers from geriatric parole eligibility….
>
> In denying his second-step, the Department of Corrections informed Mr. Thomas that pursuant to DPSC Regulation B-04-004 F(2), geriatric parole (Act 790) does not apply to offenders with offense dates committed on or after January 1, 1997. Clearly, DPSC has arbitrarily modified its internal regulations, as B-04-004F(2) previously provided:
>
>> F. Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.

3

> 1) The above provision does not apply to those offenders who are serving a life sentence.
>
> 2) Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 when the offense was committed on or after August 15, 2008.

(Doc. 1, at 9-10) (emphasis not included).

Plaintiff alleges on information and belief, that "there are other individuals similarly situated to [Plaintiff], who committed an armed robbery prior to August 15, 2008, and are being denied geriatric parole eligibility under Act 790." (Doc. 1, at 10). According to Plaintiff, he has "received at least three master prison records that reflected a parole eligibility date in accordance with Act 790." (*Id.*). Plaintiff claims:

> Because of the inscribing of the master prison record with a parole eligibility release under Act 790, the regulation B-04-004 and the actual practice of the DPSC and the Committee on Parole, a liberty interest has been created. The expectation of the population of armed robbery offenders whose offense dates are between January 1, 1997 and August 15, 2008, is that they will receive a fair parole hearing upon reaching the "20/45" provisions of the geriatric parole statute.

(*Id.*).

Plaintiff next discusses "certain agreements" made between DPSC and counsel for Plaintiff in litigation entitled *David Tell v. Richard Stalder*, Number 541,059, Section 8, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. (Doc. 1, at 11). Under one agreement, "the outcome of the *Tell* litigation would apply to all prisoners with armed robbery convictions." (*Id.*). In another, "master records would reflect the Act 790 dates for armed robbery inmates." (*Id.*). Further, the parties "agreed in the *Tell* litigation that no appeal would be taken from the State District Court ruling in *Tell* and that *Tell* would go final." (*Id.*). According to Plaintiff, this last agreement "further set[s] up an expectation that the '20/45' practice would continue." (*Id.*).

4

Plaintiff then makes allegations concerning a separate settlement in *Francis v. Leblanc*.[2] (Doc. 1, at 11-12). Specifically, Plaintiff asserts:

> At issue in this case was that the DPSC had removed parole eligibility from armed robbers whose offenses occurred prior to January 1, 1997. As part of the settlement order, the DPSC agreed to restore Act 790 parole eligibility to those offenders whose armed robbery offense occurred prior to January 1, 1997 …. However, the *Francis* decision pretermitted any decision concerning those offenders convicted of armed robbery between January 1, 1997 and August 15, 2008.

(*Id*.).

Plaintiff claims that, for twenty years, he "believed … he would be eligible for parole consideration upon attaining the age of 45 and serving 20 years of his sentence" and that he "held this belief because the DPSC repeatedly informed him that this would be the case, and even set his matter for hearing." (Doc. 1, at 12). DPSC, through its Secretary James Le Blanc, "is responsible for establishing a parole eligibility date and causing the parole eligibility date to be placed on the offender's master prison record." (*Id*.). Additionally, the Committee on Parole "is responsible for scheduling a parole hearing for an offender." (*Id*.).

Plaintiff cites to *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005), for the proposition that a liberty interest for a parole eligibility date "may arise from an expectation or interest created by state laws or policies." (Doc. 1, at 12-13). Plaintiff claims a liberty interest in favor of himself and "any similarly situated individual." (Doc. 1, at 13). Specifically, the liberty interest is that, "upon fulfilling the requirements of Act 790 (which [Plaintiff] has done), that the parole eligible armed robbery offender will be given a hearing." (*Id.*). Plaintiff maintains that this liberty interest is "protected by the [Fourteenth] Amendment … and cannot be arbitrarily withdrawn." (*Id*.). Plaintiff claims a violation of his Fourteenth Amendment right "by cancelling and refusing to reschedule his parole hearing[,]" and Plaintiff further claims

---

[2] *Francis v. Leblanc*, No. 13-691-JJB-RLB (M.D. La. 2013).

5

this is an "ongoing violation" of his rights because "DPSC continues to misinterpret applicable law and misconstrue the statutes to arbitrarily deny [Plaintiff] a parole hearing to which he is clearly entitled." (*Id.*).  Plaintiff also asserts that his substantive Due Process right was violated by an *ex post facto* application of Act 624 "to remove parole eligibility from those individuals convicted of armed robbery" like Plaintiff "who had a geriatric parole date for many years prior to 2008 and was anticipating that hearing." (Doc. 1, at 13-14).

Plaintiff seeks a declaration of his rights and an order:

1. That Mr. Thomas' parole eligibility date under Act 790 be restored and reflected on his Master Prison Record;

2. That Mr. Thomas be placed on the next available Dixon Correctional Institute parole docket, so his case may be heard.

(Doc. 1, at 14).  Plaintiff also seeks an "injunction ordering the DPSC and the Committee on Parole to re-set him on the parole docket for hearing." (*Id.*).  Plaintiff claims irreparable injury and seeks attorney's fees.  (Doc. 1, at 14-15).  Plaintiff prays for a decree that:

1. Parole eligibility is restored as to Mr. Thomas under Louisiana Act 790 of 1990.

2. That Carson Thomas is restored to the parole docket as promptly as possible and thereafter heard.

3. That a preliminary and thereafter permanent injunction issue herein ordering the DPSC to maintain a parole eligibility date for Mr. Thomas and ordering the Louisiana Committee on Parole to hold a hearing for Mr. Thomas.

(Doc. 1, at 15).

## II.  Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a

6

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346-47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. 'Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].'

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the 'reasonable inference' the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a 'reasonable expectation' that 'discovery will reveal relevant evidence of each element of the claim.' *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03

7

(5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" "has been asserted". *Id*. at 503.

## III. Discussion

Defendant moves to dismiss Plaintiff's *Complaint*, arguing that Plaintiff has never been eligible for parole. (Doc. 31-1, at 3). Defendant's motion raises the same issue raised by the motion to dismiss previously filed by Defendant Ranatza. (Doc. 20). In Defendant Ranatza's motion, she, too, argued that Plaintiff was never eligible for parole under the "geriatric parole" provision. (Doc. 20-1, at 5). Defendant Ranatza, relying upon legislative history, concluded that Plaintiff must serve at least 85% of his sentence before being eligible for parole. (Doc. 20-1, at 8). This Court agreed with Defendant Ranatza and granted her motion. (Doc. 34).[3] The same analysis applied by the Court in ruling upon Defendant Ranatza's motion applies here, and Defendant Le Blanc's motion to dismiss is granted for the following reasons.

### A. Parties' Arguments

Defendant Le Blanc acknowledges Act 60 from 1987, the "geriatric parole" provision, but argues that Act 1099 of 1995 amended 15:574.4 (B) (Doc. 31-1, at 3) to read as follows:

> No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provision of R.S. 14:64 …. Notwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least eighty-five percent of the sentence imposed, before being eligible for parole.

Act 1099 became effective on January 1, 1997. (*Id*.). Defendant argues that because Plaintiff committed armed robbery on February 9, 1997, which was 39 days after the effective date of Act 1099, he is not eligible for parole pursuant to the terms of 15:574.4(B) in effect at the time of the

---

[3] The Court notes that Plaintiff filed his opposition to the instant motion on October 9, 2019, and the Court ruled on Defendant Ranatza's motion on October 31, 2019. Therefore, the parties to the instant motion did not have the benefit of this Court's ruling at the time of briefing.

8

armed robbery. (*Id.*). See, Doc. 21-1, at 4, citing *Billard v. Kling*, 2011 WL 497175 (La.App. 1 Cir. 2011); *Billard v. Prince*, 591 F. App'x 280 (5th Cir. 2015); La. Atty. Gen. Op. No. 08-0120. Finally, Defendant argues that a "clerical error does not give cause to DOC to ignore the will of the legislature." (*Id.*).

In opposition, Plaintiff first argues that the first sentence of 15:574.4(B), as quoted above, has always existed in the statute. It was not added or amended by Act 1099. Therefore, Plaintiff argues, the amendment provided by Act 1099 should not alter how the statute was applied. The geriatric parole provision should apply, as it always has, and Plaintiff should be "docketed for parole hearing". Plaintiff relies upon the settlement reached in *Francis v. Leblanc*, 13-691-JJB-RLB (M.D. La. 2/3/14), where it was agreed that "individuals serving sentences for armed robberies committed prior to January 1, 1997 are routinely docketed for parole hearings pursuant to Act 790." (Doc. 33, at 3-4). Plaintiff does not address the fact that he committed armed robbery *after* January 1, 1997.

Plaintiff's second argument is that the purpose of Act 1099 was to reduce the rate "at which violent offender earned good time, without any impact on the same individual's eligibility for geriatric parole". Further, Plaintiff contends that there is no evidence that the intention was to "remove geriatric parole consideration from individuals convicted of crimes of violence". (Doc. 33, at 5).

Third, Plaintiff relies upon Act 624 from 2008, the purpose of which was to remove geriatric parole consideration for individuals convicted of armed robbery. If geriatric parole consideration for individuals convicted of armed robbery already did not apply post Act 1099, Plaintiff argues that Act 624 would not have been necessary. (Doc. 33, at 6-7).

9

Plaintiff also challenges the applicability and persuasiveness of the caselaw cited by Defendant, (Doc. 33, at 7-9), and criticizes Defendant's motion for failing to address *Tell v. Stadler*, (Doc. 33, at 9-10). Essentially, Plaintiff contends that La. Rev. Stat. 15:574(A)(3) that provides for "geriatric parole" applies, and Plaintiff is eligible for parole in accordance with the terms of that section of the statute. Defendant contends that La. Rev. Stat. 15:574(B) that provides for "good time parole" applies, and Plaintiff will not be eligible for parole until Plaintiff has served 85% of his imposed sentence. The main issue before the Court is which section of La. Rev. Stat. 15:574 governs.

**B.      Relevant Law**

In Louisiana, "[t]he sources of law are legislation and custom." La. Civ. Code art. 1. Further, "[l]egislation is a solemn expression of legislative will." La. Civ. Code art. 2.

The Louisiana Legislature has provided certain principles of statutory construction which the Court must follow. *See* La. Civ. Code arts. 9-13. Specifically, in interpreting a Civil Code article or statute, if the wording of a law is clear and unambiguous and does not lead to absurd consequences, the letter of the law should not be disregarded. La. Civ. Code art. 9; *see also* La. R.S. § 1:4. Conversely, "[w]hen the language is susceptible of different meanings, it must be interpreted as having a meaning that best conforms to the purpose of the law." La. Civ. Code art. 10. Additionally, "[l]aws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13.

Additionally, the Louisiana Supreme Court has also articulated principles of statutory construction:

> [I]t is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no

10

sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction.

*Moss v. State*, 05-1963 (La. 4/4/06), 925 So.2d 1185, 1196 (internal quotations omitted).

However, when the meaning of the law cannot be ascertained through examination of the text, the Court must determine the legislature's intent. "The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter …, and where the new article or statute is worded differently from the preceding law, the legislature is presumed to have intended to change the law." La. R.S. 24:177.

### C. Analysis

Here, this Court finds that two sections of La. Rev. Stat. 15:574.4, as they existed in 1997, are in conflict. The first provision concerning "geriatric parole" provides:

> *Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary*, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years of the term or terms of imprisonment in actual custody and upon reaching the age of forty-five. This provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years.

La. R.S. 15:574.4(A)(3) (1990) (italics added; amended 2008). The second provision, limiting parole for persons convicted of a crime of violence, provides:

> No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provisions of R.S. 14:64. No prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years. No prisoner may be paroled while there is pending against him any indictment or information for any crime suspected of having been committed by him while a prisoner. *Notwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least eighty-five percent of the sentence imposed, before being eligible for parole.* The victim or victim's family shall be notified whenever the offender is to be released.

11

La. R.S. 15:574.4(B) (1995) (italics added; amended 2008).  Each section of the statute provides that "notwithstanding any other provisions of law to the contrary", that section should apply.  This recurrent phrase creates a conflict in determining which section should control. To resolve this conflict, the Court turns to principles of statutory construction provided by Louisiana law.

Plaintiff's argument that the minutes from House Bill 146 evidence that the purpose of Act 1099 was only to reduce the rate at which violent offenders earned good time without "any impact on the same individual's eligibility for geriatric parole" is not persuasive.  (Doc. 33, at 5).  The words of La. Rev. Stat. 15:574.4 do not contain the phrase "good time".  If Act 1099 from 1995 was meant to affect only "good time parole", as suggested by Plaintiff, the Legislature could have made that purpose clear in the language of the statute.  *See* La. R.S. 24:177(B)(1) ("The text of the law is the best evidence of legislative intent."). It did not do so.

The Court is equally unpersuaded by Plaintiff's argument that La. Rev. Stat. 15:574.4 did not apply to persons convicted of armed robbery in 1997 because Act 624 of 2008 amended the law to specifically so provide.  (Doc. 33, at 6-7).  Louisiana Revised Statute 24:177 provides that a court may look to "the circumstances under which [the legislation] was enacted" to "determine legislative intent".  Thus, this Court is only concerned with the intent of the 1995 legislature that enacted Act 1099 and not the intent of a future legislature that subsequently altered the statute.

Since the two sections of La. Rev. Stat. 15:574.4 that are in conflict (Section (A)(3) and Section (B)) begin with "[n]otwithstanding any other law to the contrary," the Court finds that the statutory provision enacted at the later date should govern.  To hold otherwise would render that provision without meaning.  *See Moss*, 925 So.2d at 1196.  The legislature could not have intended to disregard a provision of law that had not yet been enacted.  This also conforms with statutory

interpretation principles set out by the Louisiana legislature. *See* La. R.S. 24:177(C) ("The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter."). Accordingly, this Court finds that because Act 1099 from 1995 was passed subsequent to the statutory provision's governing "geriatric parole" section, it must govern "[n]otwithstanding any other provisions of the law to the contrary". Accordingly, Plaintiff must serve 85% of his imposed sentence pursuant to Section 15:574.4(B) before he will be eligible for parole.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. 31) by Defendant James Le Blanc is **GRANTED,** and Plaintiff's claims against Defendant Le Blanc are hereby **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on May 12, 2020.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**